**2023 IL 128170**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128170)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
OLIVER J. HUTT, Appellant.

*Opinion filed May 18, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, and Rochford concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

## OPINION

¶ 1    Defendant, Oliver J. Hutt, was convicted of obstructing justice and driving under the influence of alcohol (DUI) following a bench trial. The Fourth District affirmed defendant's convictions. 2022 IL App (4th) 190142. We granted defendant's petition for leave to appeal. On appeal to this court, defendant contends

that the trial court improperly denied him a jury trial in the DUI case and that the evidence was insufficient to find him guilty of obstructing justice. We affirm defendant's DUI conviction but reverse defendant's obstructing justice conviction.

¶ 2                                    I. BACKGROUND

¶ 3        On May 22, 2017, defendant was charged by information with obstructing justice (case No. 17-CF-405) (720 ILCS 5/31-4(a)(1) (West 2016)), for an accident that occurred on May 20, 2017. Defendant was also charged with DUI (case No. 17-DT-51) (625 ILCS 5/11-501(a)(2) (West 2016)), leaving the scene of an accident (case No. 17-TR-2415) (*id.* § 11-402), and improper lane usage (case No. 17-TR-2416) (*id.* § 11-709). At the time of his arrest for the May 2017 accident, defendant was on bond from a separate 2016 criminal case in which he was charged with resisting a peace officer and criminal damage to property (case No. 16-CF-752).

¶ 4        On July 14, 2017, the Adams County circuit court found probable cause at the preliminary hearing and arraigned defendant on the charges arising from the May 2017 accident (obstructing justice, DUI, leaving the scene of an accident, and improper lane usage). The trial court informed defendant of the possible penalties for the felony obstructing justice offense and informed defendant of his rights to counsel, to a speedy public trial, to remain silent, to be present, and to confront witnesses. The trial court also informed defendant that he was presumed innocent and that defendant had the right to plead guilty or not guilty. Defendant pleaded not guilty and asked that the matter be set on the next jury docket. The trial court set the matter for jury trial on September 11, 2017, specifying that the DUI and traffic cases were set along with the obstructing justice case.

¶ 5        All matters were later continued and, on September 29, 2017, defendant appeared in court for a final pretrial conference on the four cases arising from the 2017 accident and the separate 2016 case. A jury trial on all five cases was scheduled for October 10, 2017. The State indicated that it planned to try the 2016 case first.

¶ 6        On October 10, 2017, defendant appeared for his jury trial on all five cases. The transcript from that date, however, only indicates the two felony case numbers (case

Nos. 16-CF-752 and 17-CF-405). Since the State had elected to proceed with the 2016 case first, the trial court began by advising defendant of those charges and the possible penalties. The court then advised defendant of the possible penalties in case No. 17-CF-405. The trial court informed defendant that, based on a prior felony conviction, defendant was facing extended-term sentences in both felony cases, which would be mandatorily consecutive due to the fact that defendant was out on bond when he committed the second offense. At that point, court was adjourned to allow defendant to speak to his attorney to consider a plea offer. Upon return, defense counsel indicated that defendant wanted to accept the State's offer and defense counsel had prepared a jury waiver. The trial court admonished defendant that he had the absolute right to a jury trial and asked defendant if he intended to waive his right to a jury trial in both felony cases. A jury trial waiver, signed by defendant, was presented to the judge. The signed waiver only lists the two felony cases, and the trial court stated: "I've now been handed a written waiver of your right to a jury trial in Adams County Cases 16-CF-752 and 17-CF-405" and found that defendant had "knowingly and voluntarily waived his right to a jury trial in Adams County 16-CF-752 and 17-CF-405." The written order entered on October 10, 2017, indicating that defendant waived a jury trial, lists all five case numbers (case Nos. 16-CF-752, 17-CF-405, 17-DT-51, 17-TR-2415, 17-TR-2416).

¶ 7        At the next hearing, on October 25, 2017, and before a different judge, the trial court announced all five cases, including the DUI, and noted that defendant had previously waived his right to a jury trial. When asked by the court how he wanted to proceed, defendant did not dispute that he had waived a jury trial. Instead, defendant explained why he had "waived [his] jury trial." The trial court informed defendant that, unless he filed a motion to withdraw his jury trial waiver, the court was going to set the cases for a bench trial. All matters were set for a bench trial, again beginning with the 2016 case.

¶ 8        On March 21, 2018, after a bench trial had been held in the 2016 case, that case was called for sentencing, and the four cases arising from the 2017 accident were called for status. Defense counsel indicated that defendant wished to proceed to trial in case No. 17-CF-405 and defendant did not believe that he had waived a jury trial in his obstructing justice case. The DUI case was not mentioned. The trial court set the matter for status on April 25, 2018, so that it could review a transcript of the October 10, 2017, waiver hearing.

¶ 9 At the status hearing on April 25, 2018, all five cases were called. Defense counsel indicated that the sentencing issue had been resolved in the 2016 case, defendant had waived his right to a jury trial in case No. 17-CF-405, and the DUI and traffic matters were to be tried with case No. 17-CF-405. Defense counsel relayed to the court defendant's request that the bench trial on the four 2017 cases proceed prior to sentencing on the 2016 case. A bench trial was set for the four cases arising out of the May 2017 accident (case Nos. 17-CF-405, 17-DT-51, 17-TR-2415, 17-TR-2416). Those four case numbers were called for a joint bench trial on June 26, 2018, which proceeded without objection from defendant.

¶ 10 Nakita Paetow testified that she heard a loud boom in front of her home on May 20, 2017. Upon going outside to investigate, she saw a westbound black vehicle strike the truck parked eastbound in front of her house. The black vehicle was already damaged when it struck the truck. The black vehicle proceeded about a half a block, where it stopped in the middle of the road and a male emerged from the driver's side and a female from the passenger side of the vehicle. The male fell three times while he tried to run away. Paetow identified the male as defendant.

¶ 11 Zach Bemis, an officer with the Quincy Police Department, testified that on May 20, 2017, he was on duty as a patrol officer. A female individual flagged him down, indicating that there was an unknown male individual sitting on her front porch and directing Bemis to a vehicle in the middle of the road with some front-end damage. Bemis noted the damaged black Ford vehicle, which was registered to defendant. Bemis then proceeded to the female individual's porch, where defendant was sitting in a chair. Defendant reported that he had been sitting on the porch all day and that he had not been driving. Bemis could smell alcohol on defendant's breath, and defendant appeared intoxicated.

¶ 12 Bemis placed defendant under arrest for leaving the scene of an accident, DUI, and improper lane usage. Bemis transported defendant to the police station. At the police station, defendant refused to perform field-sobriety tests. Defendant also refused to submit to a breath alcohol test.

¶ 13 Bemis prepared a complaint for a search warrant and presented it to a judge, who issued a search warrant. Defendant was transported to Blessing Hospital by Officer Robert MeGee of the Quincy Police Department. Bemis met defendant and MeGee at the hospital with the signed search warrant and showed it to defendant,

informing defendant that the warrant required defendant to provide blood and urine samples. Defendant told Bemis that he needed time to think about it. Bemis asked if defendant was refusing. Defendant did not respond to Bemis but asked the phlebotomist a question regarding bond. Bemis interpreted defendant's lack of response as a refusal to submit to the tests ordered by the search warrant. Bemis testified that it was the policy of the Quincy Police Department to present a search warrant to a defendant and explain what it requires but to not forcibly try to take a blood sample if the defendant refuses to voluntarily provide one.

¶ 14 Officer MeGee testified that he transported defendant to the laboratory area at Blessing Hospital at the request of Bemis, while Bemis obtained a search warrant. When Bemis arrived with the search warrant, Bemis showed the warrant to defendant, read it over with defendant, and asked if defendant was going to give a blood and a urine sample. According to MeGee, defendant did not respond to Bemis but addressed the phlebotomist, asking the amount of his bond. The phlebotomist and MeGee each asked defendant to provide a sample. While defendant never said the exact words "no, I am going to refuse to give you blood or give you urine," MeGee testified that, when defendant was asked to provide a blood sample or a urine sample, defendant stated no. Defendant never provided a blood or urine sample.

¶ 15 Defendant was found guilty of all charges: obstructing justice, DUI, leaving the scene of an accident, and improper lane usage. In finding defendant guilty of obstructing justice, the trial court relied upon an unpublished appellate court opinion to conclude that obstructing justice was a proper charge when defendant does not submit to a search warrant. See *People v. Kegley*, 2017 IL App (4th) 160461-U (defendant's obstructing justice conviction was upheld in case where defendant refused to provide a breath sample despite a search warrant authorizing the officer to obtain it).

¶ 16 On February 25, 2019, the trial court sentenced defendant in case Nos. 17-CF-405 and 17-TR-2415 to 24 months' probation, and to fines and costs in case No. 17-TR-2416. Defendant was sentenced to 180 days in the county jail on periodic imprisonment, with credit for 70 days already served. The remaining days were stayed pending review. The sentencing hearing on the DUI conviction was held later, on April 30, 2019. The trial court sentenced defendant to 12 months' DUI

probation. The trial court also entered a judgment of restitution in the amount of $10,175.

¶ 17    Defendant appealed his obstructing justice and DUI convictions, and the appellate court consolidated the two appeals. 2022 IL App (4th) 190142, ¶ 2. Defendant argued that

"(1) the trial court improperly denied defendant a jury trial because [defendant] did not waive that right [in the DUI case], (2) trial counsel was ineffective for misrepresenting that defendant waived a jury trial, (3) the evidence was not sufficient to find defendant guilty of obstruction of justice beyond a reasonable doubt, and (4) the trial court's order for restitution was erroneous." *Id.* ¶ 3.

¶ 18    The appellate court acknowledged that the jury waiver signed by defendant in court on October 10, 2017, only listed two cases: resisting arrest (case No. 16-CF-752) and obstructing justice (case No. 17-CF-405). *Id.* ¶ 40. However, defendant was estopped from complaining of any error in the trial court's conclusion that defendant had also waived a jury trial in the DUI case because defendant invited the error by actively ratifying the error. *Id.* ¶ 42. Defendant's acknowledgement in court on October 25, 2017, that he had waived his right to a jury trial, when considered in the context of all five cases being discussed, was deemed to include the DUI case. *Id.* ¶ 43. The appellate court found that, because defendant's claim of ineffective assistance was just another way of asserting that defendant did not waive a jury trial in the DUI case, that claim was inconsistent with its finding that defendant acquiesced to the jury trial waiver and was barred. *Id.* ¶ 45.

¶ 19    With respect to the obstructing justice charge, defendant argued that the evidence was insufficient to find him guilty because "he took no action to conceal or destroy evidence." *Id.* ¶ 48. Disagreeing with both defendant's and the State's belief that a *de novo* review was appropriate, the appellate court applied the typical standard of review in sufficiency of the evidence cases: " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* ¶ 54 (quoting *People v. Jackson*, 2020 IL 124112, ¶ 64).

¶ 20    The appellate court affirmed defendant's obstructing justice conviction, concluding that blood and urine were physical evidence under the statute and

defendant concealed the physical evidence. *Id.* ¶¶ 61-62. The court analyzed our holding in *People v. Comage*, 241 Ill. 2d 139 (2011) (plurality opinion), which noted the two dictionary definitions of "conceal" at the time the obstructing of justice statute was initially adopted in 1961. 2022 IL App (4th) 190142, ¶ 58. Defendant did not meet the definition that meant "to place out of sight" since defendant did not place his blood out of sight, but his conduct did meet the other definition noted in *Comage*: " ' "to prevent disclosure or recognition of : avoid revelation of : refrain from revealing." ' " *Id.* ¶ 62 (quoting *Comage*, 241 Ill. 2d at 144, quoting Webster's Third New International Dictionary 469 (1961)). The court further found that the evidence was sufficient to show that defendant knew he had an obligation to submit to the warrant and that the trial court could have inferred knowing refusal from defendant's attempts to change the subject or ignore requests to submit to a blood draw. *Id.* ¶ 63. Evidence of defendant's explicit refusal of the officers' request was "not as clear as it could have been," but the trial court was entitled to resolve discrepancies in favor of the State and infer that defendant clearly refused to submit to the blood draw when asked. *Id.* ¶ 64. Thus, there was sufficient evidence to convict defendant of obstructing justice beyond a reasonable doubt. *Id.* ¶ 65. The appellate court vacated the restitution order but otherwise affirmed the trial court's judgment. *Id.* ¶ 3.

¶ 21 In partial dissent, Justice Cavanagh agreed that blood was physical evidence. He disagreed, however, that defendant concealed his blood. *Id.* ¶ 80 (Cavanagh, J., specially concurring in part and dissenting in part). Defendant did not place his blood out of sight; the idea of obscuring something from view was inapposite under the circumstances of the case. *Id.*

¶ 22 Defendant filed a petition for leave to appeal, which we allowed on May 25, 2022.

¶ 23                                II. ANALYSIS

¶ 24 Defendant raises two issues before this court. First, defendant contends that the trial court improperly denied him a jury trial in the DUI case. Defendant argues that he never waived his right to a jury trial in the DUI case and that his trial counsel was ineffective for misrepresenting the existence of such a waiver to the trial court. Second, defendant contends that, as a matter of law, he could not have obstructed

justice because he took no action to conceal or destroy evidence. Alternatively, defendant argues that the evidence was insufficient to find him guilty of obstructing justice.

¶ 25                                A. Right to a Jury Trial

¶ 26        Defendant argues that he was denied his fundamental right to a trial by jury, contending that he never waived his right to a jury trial in the DUI case. Defense counsel's misrepresentations to the court regarding the existence of such a waiver compounded the error. The State contends the error is forfeited since defendant did not raise the issue in a posttrial motion. The State further contends that there was no error since the record demonstrates that defendant knowingly and understandingly waived his right to a jury trial in the DUI case. As such, his attorney was not ineffective for representing to the trial court that defendant desired a bench trial.

¶ 27        We agree with the State's contention that defendant's claim that the trial court denied defendant his fundamental right to a jury trial is forfeited because defendant failed to raise the issue in a posttrial motion. See *People v. Bannister*, 232 Ill. 2d 52, 65 (2008) (to preserve an issue for review and avoid forfeiture, a contemporaneous objection at trial and a written posttrial motion raising the issue are required (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988))).

¶ 28        Defendant contends that we should review the issue as plain error. Under Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), we review unpreserved plain errors affecting substantial rights in two limited circumstances: (1) when the evidence is closely balanced or (2) when the error was so serious that it denied the defendant a fair and impartial trial. *Bannister*, 232 Ill. 2d at 65. "Whether a defendant's fundamental right to a jury trial has been violated is a matter that may be considered under the plain error rule." *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).

¶ 29        The first step in the plain error analysis is to determine whether any error occurred, *i.e.*, whether defendant's fundamental right to a jury trial has been violated. *Bannister*, 232 Ill. 2d at 65. Defendant argues that the trial court's failure to honor its duty to protect defendant's jury trial right was a clear and obvious error

that was reversible as second prong plain error. The State contends that there was no error; defendant's statements and acquiescence to his attorney's representations indicated that defendant knowingly and understandingly waived his right to a jury trial in the DUI case.

¶ 30    The right to a jury trial in criminal prosecutions is guaranteed by the Illinois Constitution. Ill. Const. 1970, art. I, § 8. A defendant may waive his right to a jury trial, but for a valid jury waiver, the trial court must ensure that the waiver was knowing and understanding. *Bracey*, 213 Ill. 2d at 269; 725 ILCS 5/103-6 (West 2016) ("Every person *** shall have the right to a trial by jury unless (i) understandingly waived by defendant in open court ***."). Whether a waiver is knowing and understanding depends on the particular facts and circumstances of each case. *Bracey*, 213 Ill. 2d at 269. "Generally, a jury waiver is valid if it is made by defense counsel in defendant's presence in open court, without an objection by defendant." *Id.* at 270. If the facts are not in question, the issue of whether defendant knowingly waived his right to a jury trial is a question of law that we review *de novo*. *Id.*

¶ 31    In the case at bar, it is undisputed that defendant executed a written jury waiver and that he was admonished with regard to his right to a jury trial. Despite the fact that all five cases had been set for a jury trial on the day of the waiver, the written waiver did not reference the DUI case number; it only referenced the 2016 and 2017 felony case numbers. But the pretrial conference order entered by the trial court referenced all five case numbers, indicated that defendant had waived a jury trial, and removed the entire cause from the jury docket. Thereafter, when all five cases were called for a status hearing, defense counsel informed the court that defendant had previously waived his right to a jury trial. The trial court addressed defendant, informing defendant that it was going to set the matters for a bench trial. In response, defendant did not challenge the waiver but, rather, explained why he had waived his right to a jury trial. All five cases were then set for a bench trial, starting with the 2016 felony case. At subsequent court proceedings, culminating in a bench trial on the cases arising from the 2017 accident, defendant was present and never objected to a bench trial in the DUI case.

¶ 32    The State argues that defendant made a knowing and voluntary waiver of his right to a jury trial, through defendant's own statements and his acquiescence to his

attorney's representations, relying on this court's decision in *People v. Frey*, 103 Ill. 2d 327 (1984). In *Frey*, the defendant was originally indicted on two counts of reckless homicide for a fatal accident. *Id.* at 329. The defendant waived his right to a jury trial, and the matter was set for a bench trial. *Id.* Prior to the bench trial, the State filed an information adding a third count, arising from the same accident, charging the defendant with DUI. *Id.* at 330. By agreement, the reckless homicide counts were tried before the DUI count, and the parties stipulated that most of the evidence presented in the first trial could be considered by the judge in the subsequent DUI trial. *Id.* On the day of trial, the trial court stated, for the record, that all three counts were being called for a bench trial, with the reckless homicide counts being tried first. Defense counsel indicated that the defendant was ready, and the defendant did not object. *Id.* The defendant was acquitted of the reckless homicide charges, but in the bench trial the next day on the DUI count, the defendant was convicted. *Id.* at 331. On appeal, the appellate court found the record did not support a finding that the defendant waived a jury trial on the DUI count. *Id.* at 331-32.

¶ 33        We disagreed and reversed the judgment of the appellate court. *Id.* at 333. We found that it was clear from the record that the court and counsel understood that the case would be heard without a jury, even though the DUI count was not filed until after the defendant had waived a jury trial. *Id.* at 332-33. The defendant's "silent acquiescence" to the trial court's statement on the day of trial that all counts were set for bench trial indicated that the jury waiver had been made with the defendant's knowledge and consent. *Id.* at 333.

¶ 34        Defendant argues that *Frey* is distinguishable on the basis that the charges in *Frey* all related to one incident and that the defendant in *Frey* was a sophisticated defendant who silently acquiesced to all subsequent references to a jury trial waiver. Defendant argues the record shows that his silence in light of his counsel's representation that defendant was ready for a bench trial on the DUI count did not indicate acquiescence because defendant believed he no longer had the right to a jury trial, like the defendant in *People v. Scott*, 186 Ill. 2d 283 (1999).

¶ 35        In *Scott*, the defendant had executed a written jury trial waiver in his attorney's office, which was later filed with the court outside of the defendant's presence. *Id.* at 284. We found that the defendant's failure to object to a bench trial on the day

- 10 -

of the trial could not be presumed to constitute an acknowledgement and jury trial waiver in open court. *Id.* at 285. In reaching that conclusion, we relied on the facts that the defendant was never present in open court when a jury waiver was discussed and the language on the written waiver stated that defendant had until a certain date to revoke his jury waiver. *Id.* Thus, in *Scott*, the defendant's silence may have been because he thought it was too late to revoke his jury waiver, and we could not presume that the defendant's silence constituted a waiver in open court. *Id.*

¶ 36      We find that the facts of this case are distinguishable from *Scott* and more similar to the defendant in *Frey*. Although defendant in the instant case faced two separate felony counts, the trial court specifically noted, when originally setting the obstructing justice count for a jury trial, that the DUI and traffic matters tracked with the obstructing justice count. The written waiver and the transcripts only referenced the felony case numbers, but it is clear from defendant's actions that he also intended to waive his right to a jury trial with respect to the DUI and traffic cases. Defendant was sophisticated enough to make an objection, arguing that he did not waive a jury trial in the obstructing justice case. That, of course, was refuted by the written waiver and the report of proceedings from October 10, 2017. As in *Frey*, defendant was admonished about his right to a jury trial, he failed to object during pretrial proceedings when the court informed him that "we're going to set these cases for a bench trial," defendant failed to object when his attorney informed the court that defendant desired a bench trial, and defendant failed to object on the morning of trial when explicitly informed that all of his cases were set for bench trial. Further, defendant had earlier told the court, during a proceeding where all five cases were called, that he had "waived [his] jury trial." Defendant's actions demonstrate that he knowingly and understandingly waived his right to a jury trial in the DUI case.

¶ 37      Since we find that defendant's actions were sufficient to waive his right to a jury trial, we find no error and thus no plain error. Also, we need not address defendant's argument that counsel was ineffective for representing that waiver to the trial court. As that was defendant's only challenge to his DUI conviction, we affirm that conviction.

¶ 38                                    B. Obstructing Justice

¶ 39        Defendant argues that he was not guilty of obstructing justice because he took
no action to conceal his blood or urine. Alternatively, defendant contends that the
evidence was insufficient to find that he refused a direct request for his blood or
urine.

¶ 40        The State acknowledges that defendant took no action to hide otherwise visible
blood or urine but argues that defendant's refusal to allow medical professionals to
draw blood and refusal to provide a urine sample, despite being informed a warrant
had issued for both, constituted concealment in that defendant prevented disclosure
of or refrained from revealing his blood and urine.

¶ 41        Defendant's primary argument concerns whether his undisputed actions of not
providing a blood or urine sample constituted concealment under the obstructing
justice statute. Since defendant's challenge on this basis does not question the
credibility of the witnesses against him but, rather, questions whether such actions
constituted concealment within the meaning of the obstructing justice statute, it
presents an issue of statutory interpretation that we review *de novo*. See *In re Ryan
B.*, 212 Ill. 2d 226, 231 (2004) (*de novo* review when challenge is whether
undisputed facts were sufficient to prove elements of crime under the statute); see
also *People v. Donoho*, 204 Ill. 2d 159, 172 (2003) (whether statute allowed
evidence of other crime to establish propensity to commit certain sex offenses was
an issue of statutory construction, reviewed *de novo*). Thus, we begin by
determining whether the word "conceal" as used in the obstructing justice statute
encompasses defendant's actions.

¶ 42        The information in case No. 17-CF-405 charged defendant with obstructing
justice in that he "intentionally concealed evidence from Quincy Police Officer, in
that he refused to submit to blood and urine testing after being order[ed] to comply
with such through a search warrant."

¶ 43        Subsection (a)(1) of section 31-4, titled obstructing justice, provides:

        "(a) A person obstructs justice when, with intent to prevent the
    apprehension or obstruct the prosecution or defense of any person, he or she
    knowingly commits any of the following acts:

"(1) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information[.]" 720 ILCS 5/31-4(a)(1) (West 2016).

¶ 44    As we noted in *Comage*, the obstructing justice statute does not define the word "conceal." *Comage*, 241 Ill. 2d at 144. We recognized that, when construing a statute and a term is undefined in the statute, it is appropriate to apply a dictionary definition to determine the word's meaning. *Id.* At the time the obstructing justice statute was adopted in 1961, Webster's dictionary contained two definitions of the word "conceal." *Id.*

"The first definition states: '1 : to prevent disclosure or recognition of : avoid revelation of : refrain from revealing : withhold knowledge of : draw attention from : treat so as to be unnoticed ***.' Webster's Third New International Dictionary 469 (1961). The second definition states: '2 : to place out of sight : withdraw from being observed : shield from vision or notice ***.' *Id.*" *Id.*

¶ 45    Defendant focuses on the second definition from *Comage* and argues that he could not have concealed his blood or urine because he took no action to move either from a state of visibility to a state of being hidden. Defendant argues that the first definition as cited in *Comage* is not applicable to physical evidence, as the partial dissent concluded in the appellate court. Defendant highlights the other dictionary definitions cited in the partial dissent as further support for defendant's argument that people or things need to be placed out of sight in order to be concealed. See 2022 IL App (4th) 190142, ¶¶ 82-83 (Cavanagh, J., specially concurring in part and dissenting in part).

¶ 46    The State agrees that the second definition from *Comage* is not applicable because defendant did not take any action to hide otherwise visible blood and urine. The State argues that defendant's conduct falls squarely within the first definition— defendant's refusal to allow medical professionals to draw his blood or to provide a urine sample prevented the disclosure of and refrained from revealing his blood and urine. The State argues that the police were not seeking defendant's blood or urine to present at trial; rather, the police were seeking the information revealed by that testing. Defendant was attempting to hide, or conceal, that information. The State contends that defendant's conduct was exactly the type of conduct that the legislature sought to discourage in enacting the obstruction of justice statute; the

statute seeks to discourage "attempt[s] to interfere with the administration of the courts, the judicial system, or law enforcement agencies" and " 'impeding or obstructing those who seek justice in a court or those who have duties or powers of administering justice in courts.' " *Comage*, 241 Ill. 2d at 149 (quoting C.J.S. *Obstructing Justice* § 1, at 67 (2002)).

¶ 47    The appellate court concluded that the second definition of "conceal" as cited in *Comage* was not applicable because blood and urine could not be placed out of sight. 2022 IL App (4th) 190142, ¶ 62 (majority opinion). However, the appellate court found that the first definition of "conceal" from *Comage* was applicable and that defendant's conduct met that definition of conceal because he prevented disclosure of his blood. *Id.*

¶ 48    The partial dissent agreed with the majority that the second definition of "conceal" from *Comage* was not applicable to defendant's blood. *Id.* ¶ 80 (Cavanagh, J., specially concurring in part and dissenting in part). There was no evidence that defendant placed any physical evidence out of sight; a mere refusal to submit to a blood test did not meet the threshold of concealment. *Id.* ¶ 83. The partial dissent disagreed, however, that the first definition of "conceal" was applicable to defendant's refusal to have his blood drawn or provide a urine sample. *Id.* ¶ 81. Rather, the first definition of "conceal" did not pertain to physical objects; it only pertained to things like facts, information, and feelings. *Id.*

¶ 49    We agree with the partial dissent that the first definition of "conceal" as recognized in *Comage* does not pertain to physical evidence, so defendant's refusal or recalcitrance to comply with the police officers and the search warrant to obtain his blood or urine did not meet the definition of "conceal." We also agree that the second definition of "conceal" as recognized in *Comage* does not apply under the facts of this case. Defendant was accused of concealing evidence when he refused to submit to blood and urine testing. However, while defendant took no action to affirmatively comply with the search warrant, he also took no action to place his blood or urine out of sight or hide either from view. Rather, defendant remained seated in the hospital laboratory with the police officers.

¶ 50    Because defendant's actions did not amount to concealment within the meaning of the obstructing justice statute, we reverse defendant's conviction of obstructing justice. Having concluded that defendant prevails on his primary argument, we do

not address his alternative argument that the evidence was insufficient to sustain the conviction. Accordingly, the judgments of the appellate and circuit courts are reversed with respect to defendant's obstructing justice conviction.

¶ 51                                       III. CONCLUSION

¶ 52        For the reasons set forth above, we affirm that part of the judgment of the appellate court that affirmed the circuit court's judgment convicting defendant of DUI. We reverse that part of the judgment of the appellate court that affirmed the circuit court's judgment convicting defendant of obstructing justice and reverse the circuit court's judgment convicting defendant of obstructing justice. There was no challenge in this court to the part of the appellate court judgment that vacated and remanded the circuit court's restitution order.

¶ 53        Appellate court judgment affirmed in part and reversed in part.

¶ 54        Circuit court judgment affirmed in part and reversed in part.

¶ 55        JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.